510 So.2d 87 (1987)
Donald R. JOHNSON
v.
STATE of Louisiana Through the DIVISION OF ADMINISTRATION.
No. 86 CA 0843.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
*88 Donald R. Johnson, in pro. per.
Boris F. Navratil, Baton Rouge, for defendant-appellee State Through Div. of Admin.
Before SAVOIE, CRAIN and LeBLANC, JJ.
SAVOIE, Judge.
This is a worker's compensation action. Plaintiff, Donald Johnson, filed suit against his former employer, State of Louisiana, through the Division of Administration, (State), to recover worker's compensation benefits. The State reconvened seeking reimbursement for benefits and medical expenses previously paid plaintiff. After trial on the merits, the court ruled against the plaintiff on the main demand and in favor of the defendant on its reconventional demand. Plaintiff, in proper person, now appeals.
Plaintiff alleged that he slipped and fell on some stairs at the Capitol Building while in the course and scope of his employment. This alleged accident occurred on either May 24, 1982, or May 27, 1982. The State paid Johnson $11,000.00 in compensation payments and $16,057.80 in medical payments for injuries he allegedly sustained due to the fall. The State then stopped paying worker's compensation after July 26, 1985, and stopped paying medical expenses on September 16, 1985. Plaintiff filed suit against the state on September 10, 1985, for additional benefits. The State filed its reconventional demand on October 10, 1985.
The trial judge awarded the State $27,057.80 on its reconventional demand; this amount represents all previous benefits and medical expenses the State paid to plaintiff. In his written reasons for judgment, the trial judge found that the plaintiff did not prove by a preponderance of the evidence that an accident with resultant injuries had occurred.
*89 Plaintiff now appeals, raising four assignments of error. These are as follows: 1) the State's reconventional demand is prescribed; 2) the trial court erred in allowing defendant to introduce at trial documents which were not disclosed to plaintiff during discovery, prior to trial; 3) the trial court erred in finding that no accident occurred; and 4) the trial court erred in denying plaintiff's claim for worker's compensation benefits. Plaintiff also raises two exceptions for the first time on appeal. Plaintiff filed peremptory exceptions of prescription and no cause of action as to defendant's reconventional demand.

EXCEPTION OF NO CAUSE OF ACTION
Plaintiff raises on appeal a peremptory exception of no cause of action as to defendant's reconventional demand. Plaintiff contends that where an employer pays worker's compensation and medical benefits voluntarily with full knowledge of the employee's condition, the employer is not entitled to reimbursement for the amounts paid. Plaintiff cites the case of Carter v. Montgomery Ward & Co., Inc., 413 So.2d 309 (La.App. 3rd Cir.1982), wherein an employer sought reimbursement for compensation and medical payments to an employee. According to the court, the employer's claim for reimbursement was an action to recover payment of a thing not due under LSA-C.C. art. 2301. The court stated:
"for the stability of society and of transactions, voluntary payments made with full knowledge of all the facts and not under duress may not be subsequently recovered, even though the amount so paid is not actually owed." (Citations Omitted). Carter v. Montgomery Ward & Co., Inc., 413 So.2d at 314.
In ruling on an exception of no cause of action, the court must determine "whether the law grants a remedy to anyone for the particular harm alleged by plaintiff. This exception is triable on the face of the petition. All the allegations of the plaintiff's petition are accepted as true and no evidence is admissible to support or defeat the exception." Klein v. Recorder of Mortgages for Parish of Orleans, 430 So.2d 1047, 1049-1050 (La.App. 4th Cir.1983).
In applying this standard to the State's reconventional demand, the State's allegations are as follows:
10.
Defendant in reconvention, Donald R. Johnson, represented to plaintiff in reconvention that while working as a student assistant for the Commissioner's office in the Division of Administration, he was involved in an accident which caused injuries to his left hip, shoulder and right elbow which caused him to be unable to pursue his employment. Based on these assertions, defendant has paid to plaintiff Eleven Thousand Dollars ($11,000) in indemnity benefits and Fifteen Thousand Nine Hundred Eighty-Nine & 58/100 Dollars ($15,989.58) in medical payments.
11.
In fact, Johnson did not sustain any injuries while employed by the Division of Administration of the State of Louisiana and the aforesaid payments were made to him in error. Petitioner in reconvention is entitled to recover these payments from the defendant in reconvention.
The State has alleged that the payments were made to Johnson in error. Because these payments were not made with full knowledge, the State's right to reimbursement is not precluded. The State has set forth a cause of action for recovery of payment of a thing not due under LSA-C.C. art. 2301. For these reasons, Johnson's exception of no cause of action is denied.

PRESCRIPTION
Johnson has raised the issue of prescription in assignment of error No. 1 as well as in an exception of prescription. He contends that the reconventional demand is prescribed because the State filed it on October 10, 1985, over one year after Johnson's alleged accident. Yet, as discussed earlier, the State's claim for reimbursement is a claim for recovery of payment of *90 a thing not due under LSA-C.C. art. 2301. Carter v. Montgomery Ward & Co., Inc., 413 So.2d at 314. The prescriptive period for such an action is ten years. LSA-C.C. art. 3499. Merrill Lynch, Pierce, Fenner & Smith Incorporated v. Theriot, 383 So.2d 413 (La.App. 4th Cir.1980). The one year prescriptive period applicable to offenses or quasi-offenses is not applicable. For these reasons, Johnson's exception of prescription is denied, and assignment of error No. 1 has no merit.

INTRODUCTION OF DOCUMENTS NOT DISCLOSED PRIOR TO TRIAL FOR PURPOSE OF IMPEACHMENT
Plaintiff's second assignment of error is that the trial court erred in allowing into evidence Johnson's application for employment with the District Attorney's office. The State introduced the employment application into evidence on cross-examination in order to discredit Johnson's testimony. The application was filled out by the plaintiff less than five months after the alleged accident while plaintiff was receiving worker's compensation and was still allegedly suffering disability from his injury. Yet, in the application, plaintiff answered negatively a question asking if he had ever received any worker's compensation benefits and one asking whether he had any disability.
Plaintiff's counsel (who withdrew from representation of Johnson on March 19, 1986, following the trial) objected to the introduction of the employment application because defendant had not produced the application in response to a request for production of all documents to be used at trial. At trial, several other documents not disclosed in discovery were introduced to impugn Johnson's veracity, without any objection by plaintiff's counsel. The court overruled plaintiff's counsel's objection to the introduction of the employment application on the basis that documents used to impeach need not be disclosed in discovery.
The State contends that it is a general rule that documents used to impeach need not be disclosed in discovery. Although the Code of Civil Procedure articles concerning discovery do not set forth this general rule, the local court rules of the Nineteenth Judicial District dealing with the pretrial order are helpful by analogy. According to Rule VII, Section 3(J) and (H), exhibits and witnesses to be used for impeachment purposes are not required to be listed on the pretrial order.
The plaintiff's request for production to defendant and the defendant's portion of the pretrial order both deal with evidence to be introduced during the defendant's case-in-chief. Impeachment evidence is introduced during cross-examination of the plaintiff's witnesses. Since all witnesses are presumed to testify truthfully, whether impeachment evidence is necessary is not known until the witness testifies. LSA-R.S. 15:432. To require defendant to disclose in discovery evidence which may or may not be necessary to discredit a witness' testimony would be unduly burdensome. For these reasons, we find no error in the trial court's failure to sustain plaintiff's objection to the introduction of the impeachment evidence.

PLAINTIFF'S ENTITLEMENT TO WORKER'S COMPENSATION BENEFITS
Plaintiff's assignments of error nos. 3 and 4 basically raise the same issue: whether the trial court was correct in finding that plaintiff was not entitled to recover worker's compensation benefits.
In order to recover under worker's compensation an employee must receive "personal injury by accident arising out of and in the course of his employment." LSA-R.S. 23:1031. The trial court found that plaintiff did not prove by a preponderance of the evidence that an accident happened nor that he sustained any injuries due to a work-related accident. As the judge stated in his written reasons for judgment, "it boils down that Mr. Johnson's credibility was so well-countered in the cross-examination that this court does not believe Mr. Johnson."
Johnson's testimony was as follows: While a law student at LSU, he worked as a student employee for the Division of Administration. *91 On Thursday, March 27, 1982, he was going from the twelfth floor to the eleventh floor in an enclosed stairwell in the Capitol Building where he worked. He slipped and fell in the stairwell, possibly because he was wearing new leather-soled shoes. He hit his head, back, and elbow on the stairs. Although he cried out, no one witnessed the incident or came to his aid.
Johnson testified that at the time of the accident, most of the administrative people for whom he worked, as well as Wayne Grant, his immediate supervisor, were not in the building, so he left. On his way out, he reported the accident to a Capitol Building police officer. The policewoman made no report of the accident. Based on her instructions, Johnson said that he reported the accident to either Wayne Grant or Wayne Grant's secretary either that same day or the next day. Johnson also testified that he never filled out an accident report form.
Johnson testified that he actually worked only one day after the accident. His payroll records show hours worked from Monday, May 24, through Friday, May 28. On June 1, 1982, Johnson's employment records show that Wayne Grant conducted a separation interview with Johnson. The separation interview report states that Johnson resigned from his job on June 1, 1982, because he was no longer eligible for student employment due to his graduation from law school. No mention of the accident is made in the separation report.
Johnson saw Dr. DeJean on June 4, 1982, for treatment of his alleged injuries. Johnson stated in his deposition that he had very deep bruise marks on his back and elbow. Dr. DeJean's deposition stated that he did not see any black or blue spots. He only found contusions to the left shoulder blade area, the left buttock and right elbow. Following his treatment by Dr. DeJean, Johnson saw a succession of other medical professionals and ultimately underwent surgery for impingement syndrome of the right shoulder on May 10, 1984.
Through cross-examination of Johnson and the introduction of its own evidence, the State impeached Johnson's testimony. The State mainly concerned itself with Johnson's testimony that he had no prior injury to his right shoulder and that he had no prior worker's compensation claims. The State introduced a petition filed on March 28, 1983, for a worker's compensation settlement between Donald Johnson and Johnson's former employer, United Parcel Service. In the petition, Johnson alleges that he was injured during the course and scope of his employment with UPS on February 16, 1981, and that the injury resulted in a 35% permanent partial disability of the right shoulder. Johnson received $2,142.00 in medical expenses from UPS, $17,767.00 in worker's compensation benefits from February 23, 1981, to March 20, 1983, and $17,500.00 as a compromise settlement.
The State introduced medical reports showing that Johnson was treated for the 1981 shoulder injury by a Dr. Bolton from October, 1981, through June 14, 1982. Dr. Bolton was recommending surgery for the right shoulder as early as March 5, 1982. On June 14, 1982, about three weeks after Johnson's fall in the Capitol, he again saw Dr. Bolton. Johnson made no mention whatsoever of his fall to Dr. Bolton. Johnson saw Dr. Bolton again on August 23, 1982; again Johnson made no mention of the May 24th fall.
Likewise, as is shown by the medical records introduced by Johnson, he never disclosed his February 16, 1981, shoulder injury or his treatment by Dr. Bolton, to any of the doctors treating him for the May 24th fall.
The trial judge commented on the impeachment evidence in his written reasons for judgment:
I was absolutely shocked that during cross-examination he [Johnson] would have the audacity to try and tell this Court he had forgotten about the severe injury [February 16, 1981, shoulder injury] some 15 or 16 months prior to the one he's claiming. He couldn't remember ever receiving several hundred dollars a week in compensation from UPS; he just didn't think about the $17,500 settlement.

*92 Didn't think about telling these new doctors about the prior injury, which happens to be the same injury. There was no reason given why he didn't go back to Dr. Bolton. In the nine years I have been on the bench, I have never heard testimony as flagrant as Mr. Johnson's testimony.
Johnson in his brief contends that "the court erred in determing [sic] that because appellant had been previously compensated for an injury, he was stopped from claiming compensation from appellee." Johnson's contention has no merit. The trial court did not deny recovery because plaintiff had a pre-existing injury. The trial court denied recovery because plaintiff concealed the fact of the pre-existing injury from his employer and his doctors; plaintiff claimed he had never made a worker's compensation claim and had never before injured his shoulder. When State's counsel impeached Johnson's testimony by documentation of the prior injury, the court no longer believed Johnson's testimony concerning the fall and the injuries.
Although the trial judge in his written reasons for judgment only discussed Johnson's prior shoulder injury and worker's compensation claim, the State further countered Johnson's testimony. The State introduced evidence to show that Johnson did not report the alleged accident to his supervisor, Wayne Grant; that a personnel worker in another department filled out an accident report form on June 1, 1982 based on information Johnson gave her; and that if Johnson had reported his alleged accident to a Capitol Building police officer, there would have been a record of his report.
Johnson's testimony as to the date and time of the accident also varied. In his petition, in his deposition, in his appellate brief filed in proper person, and in the accident report form, he said that the accident occurred on Monday, May 24, 1982. At trial, he said that the accident happened on Thursday, May 27, 1982. In his deposition, he stated that the accident happened around noon. At trial, he said that it took place later than that. The accident report form gives 2:00 as the time. If this "serious" accident occurred on Monday, May 24, 1982, according to Johnson's payroll records, he worked the remainder of the week afterward. If the accident happened on May 27, he worked one day afterward. Regardless of which date is correct, plaintiff's description of the severity of his fall is contradicted by the evidence showing that he was able to continue to work and that he did not mention the accident to Grant, his immediate supervisor, or any of his co-employees, during this time.
There is ample evidence in the record to support the trial judge's finding that the plaintiff was not entitled to worker's compensation. The trial judge, as the trier of fact, actually hearing and observing the witnesses give live testimony, is in a better position to evaluate credibility than a reviewing court on the intermediate level, which at best can only study the written words of a cold record. Burbank v. LeBeouf, 471 So.2d 980, 982 (La.App. 1st Cir. 1985).
The record clearly reflects that the injury for which Johnson sought recovery against the State was the same injury he had sustained while working for UPS. The operation which Johnson claimed he underwent as a result of his alleged accident while working for the State was the same operation recommended by the doctors treating Johnson for his UPS injury. In essence, the record shows that Johnson is seeking to recover twice for one accident and injury.
Johnson's actions are particularly egregious because Johnson is a practicing attorney, a member of the bar and an officer of the court, who has a duty to uphold the law. We find that Johnson's attempt to recover from the State for a claim based upon a fictitious accident and injuries is an insult to the legal profession.
For the above reasons, assignments of error Nos. 3 and 4 are without merit. We find that the trial court was correct in finding for the state in defense of the worker's compensation claim and also recovering money paid as a result of the *93 claim. The judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.