551 So.2d 42 (1989)
Ervin COLLINS, et al.
v.
The CROSBY GROUP, INC., Lebus International, Inc., Crosby International, American Hoist Industries a/k/a Amhoist, a subsidiary of Crosby Group and Employers National Insurance Company.
No. CW 88 1973.
Court of Appeals of Louisiana, First Circuit.
October 11, 1989.
Rehearing Denied November 17, 1989.
Writs Denied January 5, 1990.
Gordon Hackman, Boutte, for plaintiff.
Darryl J. Foster, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley Moss & Frilot, New Orleans, for Employees Nat. Ins. Co., defendant.
Before COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
We granted certiorari on plaintiff's application in this workers' compensation suit which raises the issue of whether certain impeachment evidence in defendant's possession is discoverable by plaintiff prior to trial. The district court held that this evidence, namely surveillance films taken of plaintiff by an investigator, was not discoverable, and granted a motion to quash a deposition of the investigator and issued a protective order. Upon careful consideration of this question of first impression, we find this disposition of the issue to be erroneous.
Plaintiff initially filed suit for workers' compensation benefits against his employer's insurer and for recovery under products liability law against the manufacturers of a chain that allegedly failed while plaintiff was loading his truck, during the course and scope of his employment. The products liability claim was severed from the workers' compensation claim, and plaintiff proceeded with the claim against his employer's insurer, Employers National Insurance Company. In answer to interrogatories propounded by plaintiff, (after an initial objection) Employers National admitted *43 that it had conducted surveillance of plaintiff via Resolve Investigations. Plaintiff then issued a subpoena for the deposition of a representative of Resolve Investigations and a subpoena duces tecum for the production of all records pertaining to this lawsuit.
Defendant moved for a protective order and to quash the deposition of the investigator, on the ground that these surveillance films were protected as attorney work product and/or preparation for litigation under LSA-C.C.P. art. 1424. It further argued that this material was impeachment material only, not admissible unless plaintiff testified falsely regarding his physical condition, and that it would lose its value if revealed prior to trial.
The trial judge agreed with this argument, and cited two federal court decisions from other jurisdictions in support of his judgment. Plaintiff applied for writs of certiorari, mandamus, and prohibition, contending that Article 1422 is controlling rather than Article 1424. Plaintiff also argues, as he did below, that "there is a strong possibility that the surveillance films were taken intermittently" and edited to suggest that plaintiff is a malingerer.
LSA-C.C.P. art. 1422 is the general discovery article which provides that any relevant matter, not privileged, is discoverable. It reads, in pertinent part:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
Article 1424 restricts the application of Article 1422. It provides, in pertinent part,
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert.
As defendant correctly notes, our discovery rules are based upon the Federal Rules of Civil Procedure; thus, Louisiana Courts look to federal case law where Louisiana law is silent. Giroir v. South Louisiana Medical Center, 475 So.2d 1040 (La. 1985). The cases cited by the trial judge in his reasons for judgment, Bogatay v. Montour Railroad Company, 177 F.Supp. 269 (W.D.Pa.1959) and Hikel v. Abousy, 41 F.R.D. 152 (D.C.Md.1966), are contrary to the weight of federal authorities and those of other jurisdictions.
In Bogatay v. Montour Railroad Company, the court's actual holding was that prior to the submission of the pretrial order, defendant would not be required to answer interrogatories inquiring into whether any of defendant's representatives had "observed" plaintiff and that at the pretrial conference defendant would be required to elect whether the information (if any) would be used as substantive evidence or for impeachment purposes and, if for the latter, the court would determine in camera whether the evidence was indeed "impeaching" or substantive. Bogatay, 177 F.Supp. at 270.
Hikel v. Abousy, involved discovery of the existence of still pictures or motion pictures. The court, quoting an unpublished state court decision, noted that "the right of a party to obtain access to photography or even motion pictures ... upon a showing of good cause [is not foreclosed]... [t]here simply has been no showing of *44 cause." 41 F.R.D. at 155, n. 1 (quoting Thorne v. Good Humor Ice Cream Co., (Super.Ct. Baltimore City, March 26, 1964) (reported in the Daily Record, May 8, 1964)).
An annotation more recent (i.e., in this decade) than these two cited cases, however, offers a compilation of some fourteen cases from the courts of nine states and three federal district cases which held the existence and contents of surveillance films discoverable. Annot, 19 A.L.R. 4th 1236, 1237-40 (1983). Bogatay and Hikel are the only contrary authority discussed in the annotation. Id. at 1240-41.
In Dodson v. Persell, 390 So.2d 704 (Fla. 1980), the Florida Supreme Court held surveillance films discoverable "in every instance where they are intended to be presented at trial either for substantive, corroborative, or impeachment purposes." Id. at 707. The court quoted the following passage from Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148, 150 (E.D.Pa.1973):
[T]he camera may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. Lighting, focal lengths, and camera angles all make a difference. Action may be slowed down or speeded up. The editing and splicing of films may change the chronology of events. An emergency situation may be made to appear commonplace. That which has occurred once, can be described as an example of an event which recurs frequently. We are all familiar with Hollywood techniques which involve stuntmen and doubles. Thus, that which purports to be a means to reach the truth may be distorted, misleading and false.
390 So.2d at 706.
In Dodson the court concluded that the judicial function of determining the truth is best served when all relevant facts are before it, and that tactical surprises at trial impair the presentation of all the facts.
In Olszewski v. Howell, 253 A.2d 77 (Del. 1969), the court expressed concern that motion picture evidence is subject to misuse by splicing and editing, and that a plaintiff should be provided the opportunity to determine the accuracy of the film. Annot., supra at 1238.
In Jenkins v. Rainner, 69 N.J. 50, 350 A.2d 473 (1976), a similar concern for "distortion or misidentification" premised the holding therein that the films were discoverable. Id. at 1239.
The courts in Dodson, Olszewski, Snead, and Jenkins all addressed the issue commonly raised by the defendant objecting to the production of the film (that a plaintiff may tailor his testimony to resolve inconsistencies between the film and his allegations) by holding that the deposition of the plaintiff should be taken prior to production of the film in order to preserve any possible inconsistency.
The trial court, in denying plaintiffs motion, observed that extensive cross-examination of the investigator and/or camera person could protect against an edited or otherwise misleading film. However, how can truly effective extensive cross-examination be prepared in the brief interval between disclosure of the film at trial (probably during the investigator's direct testimony) and the plaintiff's opportunity to cross-examine? The weight of authority discussed hereinabove recognizes the difficulty in preparing effective cross-examination without adequate opportunity to discuss the matter with the plaintiff himself and consultation with a technical expert.
The cases discussed above recognize the unique nature of photographic evidence, particularly video taped evidence. Documentary evidence is simply much less likely to be forged or altered than a video tape is likely to be edited. There lies the problem, because editing alone, without any outright trickery, can be very misleading.
This court has previously ruled on the admissibility of documentary impeachment evidence that was not disclosed during discovery but was nevertheless admitted into evidence at trial over plaintiffs objection. In Johnson v. State Through the Division of Administration, 510 So.2d 87 (La.App. 1 Cir.1987), a suit for workers' compensation benefits, the evidence at issue was an *45 employment application in which plaintiff gave false information regarding his physical condition and receipt of compensation benefits. Judge Savoie, writing for the court, stated:
The plaintiff's request for production to defendant and the defendant's portion of the pretrial order both deal with evidence to be introduced during the defendant's case-in-chief. Impeachment evidence is introduced during cross-examination of the plaintiff's witnesses. Since all witnesses are presumed to testify truthfully, whether impeachment evidence is necessary is not known until the witness testifies. LSA-R.S. 15:432. To require defendant to disclose in discovery evidence which may or may not be necessary to discredit a witness' testimony would be unduly burdensome. For these reasons, we find no error in the trial court's failure to sustain plaintiffs objection to the introduction of the impeachment evidence.
510 So.2d at p. 90.
Johnson focused on whether the undisclosed impeachment evidence was admissible at trial, while this case questions whether the impeachment evidence, the existence of which is known, is subject to discovery prior to trial. Moreover, as we pointed out above, Johnson's documentary evidence was much less likely to be altered than the video tape at issue here is susceptible to being edited. Thus, the facts and the reasoning in Johnson are inapposite to the case at bar.
For these reasons, the writ of certiorari is made peremptory, and plaintiff's application for writs of prohibition and mandamus are granted. The trial judge is ordered to allow discovery in accordance with the views herein expressed.
WRITS GRANTED.