635 So.2d 365 (1994)
George SANDERS, and His Wife, Gisele Sanders
v.
TIDEWATER, INC. and Sonat Offshore Drilling, Inc.
No. 93-CA-1181.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1994.
*366 Philip E. Henderson, Henderson, Hanemann & Morris, Houma, for plaintiff-appellant George Sanders.
Charles A. Cerise, Jr., William B. Gibbens, III, Gelpi, Sullivan, Carroll & Gibbens, New Orleans, for defendant-appellee Tidex, Inc.
Edwin C. Laizer, E. Gregg Barrios, Adams & Reese, New Orleans, for defendant-appellee Sonat Offshore Ventures, Inc.
Before BARRY, KLEES and WARD, JJ.
*367 KLEES, Judge.
Plaintiff George Sanders appeals the trial court's judgment, which found no liability on the part of defendants Tidex, Inc. ["Tidex"] and Sonat Offshore Ventures, Inc. ["Sonat"] for injuries suffered by plaintiff in a maritime accident. We affirm.
On September 16, 1989, the thirty-five year old Sanders was employed by Tidex as a licensed mate aboard the M/V Bea Tide, an offshore supply boat. On that date, Sanders was injured while attempting to release a mooring line which secured the M/V Bea Tide to a jack-up drilling rig owned by defendant Sonat. The barge mooring line "threw a loop" and struck Sanders in the face, knocking him unconscious.
Sanders, whose status as a Jones Act seaman is undisputed, filed this suit alleging Jones Act negligence on the part of his employer Tidex, general maritime negligence on the part of Sonat, and the unseaworthiness of the M/V Bea Tide and of the Sonat rig. On motion of Sonat, the claim alleging unseaworthiness of the rig was dismissed with prejudice. The remaining three claims were tried before a jury for five days in November, 1992. The jury returned a verdict finding no Jones Act negligence, no general maritime law negligence, and no unseaworthiness of the M/V Bea Tide.
The trial judge entered judgment accordingly. Plaintiff's motion for new trial was denied, and this appeal followed. On appeal, plaintiff has chosen to abandon the unseaworthiness contention and to challenge only the findings of no negligence on the part of Tidex and Sonat. Because the standard of review for a Jones Act claim differs from that for a general maritime law negligence claim, we must consider the liability of each defendant separately. See Osorio v. Waterman S.S. Corp., 557 So.2d 999 (La.App. 4th Cir.1990), writs denied, 561 So.2d 99 (La. 1990).

Liability of Tidex
Plaintiff's cause of action against his employer Tidex is governed exclusively by the Jones Act, 46 U.S.C. § 688. As this court has previously held:
The standard of review as to the jury's findings of fact in Jones Act cases is the same as in unseaworthiness cases; the jury's findings cannot be disturbed on appeal unless there is a complete absence of probative facts to support those findings.

Huff v. Compass Navigation, Inc., 522 So.2d 641, 645 (La.App. 4th Cir.1988), writ denied, 526 So.2d 797 (La.1988) (Emphasis added). The question of Tidex's negligence was purely a factual issue which the jury had to resolve by making judgments of credibility and weighing the testimony of the various witnesses, including the plaintiff and the other crew members who were present at the time of the accident. Plaintiff argues that the captain of the M/V Bea Tide was negligent in propelling the vessel forward without warning the crew, thus causing slack to come out of the mooring line while the men were trying to untie it. However, after examining the record, we find more than sufficient probative facts upon which the jury could have based its conclusion that the captain (whose negligence would have been imputed to Tidex) was not at fault.
Plaintiff is an experienced seaman, having worked thirteen years offshore, including four as a licensed mate. As second-in-command of the M/V Bea Tide, he was in charge of the mooring operations. Tying and releasing mooring lines is a routine part of a vessel crew's job. Several crew members testified that they knew to watch for tightening of lines, because a taut line can part and cause serious injury. Plaintiff, who was very experienced in tying and untying lines, stated that he was aware of this danger and had advised his wife that a line could "pop his chest out."
On the day of the accident, plaintiff Sanders and two junior crew members under his supervision, James Wimbly and William Neal, proceeded onto the stern deck of the M/V Bea Tide to release the mooring lines which were connecting the supply boat to the Sonat rig. There was some slack in the lines. They successfully released the port mooring line. Then, according to Neal's testimony, they threw two to three wraps off the starboard stern bit, at which point Neal noticed the mooring line becoming taut and *368 he told Sanders to watch out because the line was beginning to get tight. David Knight, a roustabout on the Sonat rig, watched the whole mooring procedure from his position at the handrail of the right overlooking the stern of the boat. Knight testified that he noticed the line becoming taut and gave a warning over the public address system that the line was getting tight. Knight watched Neal and Wimbly move out of the way of harm, running to the front of the boat. Both Neal and Knight testified that Sanders also had room to get away, but he did not move. Aaron Chamblee, a Sonat crane operator who witnessed the incident, also said Sanders had an opportunity to move but did not.
Sanders testified that he doesn't remember any warning being given and he has no memory of the accident itself. He suggested that he probably did not have time to move out of danger, but this suggestion was counteracted by the testimony of eyewitness Knight, who said the other two crewman were "halfway" to the front of the boat by the time the line threw a loop, but Sanders simply stayed in place watching the rope.
The captain, who was piloting the vessel, had to maintain the balance of keeping enough slack in the mooring line to have it released without allowing too much slack, which might foul up the vessel's propellers and disable the vessel. The captain testified that he let the vessel "ease out". Neal and Knight both testified that the vessel was moved forward gradually. From this testimony, the jury could have reasonably concluded that if the movement of the vessel and the tightening of the line was gradual enough to enable the two junior crew members to get out of the way, Sanders also had an opportunity to escape harm, but he neglected to do so by his own fault. Under these circumstances, the jury's conclusion that the accident was not due to the negligence of Tidex is reasonable and is supported by probative evidence.

Liability of Sonat
Plaintiff asserts a general maritime law negligence claim against Sonat. Recently, this court has held that in a maritime case tried in state court, the jury's determination on the issue of negligence is to be reviewed on appeal according to the Louisiana appellate standard of review. Young v. Armadores de Cabotaje, S.A., 617 So.2d 517, 525 (La.App. 4th Cir.1993), writs denied, 625 So.2d 170-71 (La.1993). Therefore, we may not set aside the jury's findings of fact in the absence of "manifest error" or unless they are "clearly wrong." See Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993) (Citations omitted). The issue to be resolved by us is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id.
Plaintiff's claim against Sonat is based on the contention that Sonat negligently provided the M/V Bea Tide with a mooring line that was stiff and covered with cement. There was conflicting testimony on this issue at trial. Crew members Neal and Wimbly stated that the lines were hard, stiff and difficult to handle because they had cement on them. Neal and Sanders testified that they complained to the captain of the vessel about the condition of the lines, who said he would report it to the rig. The captain, James Douglas, testified that he called the Sonat rig after the vessel was moored to it and reported that the lines were stiff. However, Douglas also testified that he didn't believe the situation was so dangerous that the lines should have been cut and dumped into the water rather than being released normally.
In contrast to the testimony of the captain and crew members of the vessel is the testimony of David Knight and Aaron Chamblee, who were on the Sonat rig. David Knight, the Sonat roustabout who witnessed the accident, also had inspected and assisted in hanging the mooring lines on the morning of the accident. Knight stated that when the line was hung just hours before the accident, there was no cement on the line. He also stated that he did not see the vessel's crew members having any difficulty with the lines before the accident. Finally, Knight stated that new mooring line was available on the rig if the line had needed changing. Aaron Chamblee corroborated Knight's testimony that there was no cement on the line that morning. In addition, Chamblee stated there were no complaints made to Sonat about the condition of the line either before *369 or after the accident. He also did not notice the crew having any difficulty with the line. Chamblee confirmed that there was a new mooring line available on the rig and that the Sonat crew would have changed the line if it had needed changing or if the vessel's crew had requested that it be changed.
The evidence also established that Tidex trains its employees to handle stiff lines because tying and untying boats is a major part of the crew's job. The Tidex crew was expected to handle problems such as jammed lines, which are commonly encountered in mooring operations. Plaintiff himself was in charge of mooring operations and therefore was the individual who made the decision to moor the vessel to the rig in the first place. Plaintiff, as the mate, was responsible for the Tidex crew's safety, coordinated all deck operations, supervised and instructed the crew, and was responsible for inspecting the vessel and its equipment.
In view of this evidence, the jury could have reasonably assumed either that the line was not dangerously stiff, that no complaint about the line had been made, or in the alternative, that plaintiff should have insisted that the line be changed before allowing the vessel to be moored. We therefore find no manifest error in the jury's conclusion that Sonat was not negligent.

The Letter
The remaining issue on appeal is plaintiff's contention that this case deserves a de novo review and ultimate reversal by this court because of an alleged evidentiary error made by the trial court in its handling of a specific piece of evidence, a letter written by plaintiff's wife to defense counsel. On August 22, 1992, plaintiff's wife Giselle Sanders on her own initiative wrote and sent by certified mail to Tidex's attorney a letter in which she contradicted many of the plaintiff's damage claims. In September of 1992, several months prior to trial, Mrs. Sanders told plaintiff's counsel that she had written the letter and told him the contents of it. On counsel's instruction, Mrs. Sanders wrote to counsel for Tidex and Sonat and requested a copy of the letter, because she had not kept a copy. Tidex and Sonat sought a protective order; plaintiff's counsel responded by filing a motion to compel. At a hearing on October 30, 1992 (four days prior to trial), the trial judge granted the protective order and ordered Mrs. Sanders to submit to a pretrial deposition, after which the letter was to be produced to her. Counsel for plaintiff chose not to produce Mrs. Sanders for the deposition. When Mrs. Sanders took the stand at trial, the trial judge allowed her to review the letter with plaintiff's counsel for ten minutes before testifying. Plaintiff's counsel questioned Mrs. Sanders about the letter on direct examination, at which time Mrs. Sanders testified that she had written the letter out of anger at her husband. During cross-examination, a blow-up of the letter was used by defense counsel without any objection by plaintiff's counsel. At the close of evidence, as the exhibits were being marked, plaintiff's counsel requested that certain portions of the letter be blacked out before the letter was placed into evidence. The trial judge agreed, and the letter was so edited.
On appeal, plaintiff contends that he should have been allowed to discover the contents of the letter before trial. Plaintiff also argues that the letter was so prejudicial that it tainted the verdict.
We do not find that the trial judge acted improperly with regard to the discovery of the letter. In regulating pretrial discovery, the trial court has broad discretion, which will not be disturbed on appeal absent a clear showing of abuse. Moak v. Illinois Central Railroad Company, 631 So.2d 401 (1994). In Moak, the Supreme Court ruled that the trial judge in his discretion may (but does not have to) permit the defendant to take the plaintiff's deposition before ordering defendant to produce for plaintiff surveillance films taken of plaintiff. The Court noted that there was no difference between the discovery of surveillance films and the discovery of any other evidence, stating further:
Accordingly, the trial judge has the discretion to determine the appropriate timing for the pretrial discovery of surveillance materials. Mindful of the parties' competing considerations and the objectives of discovery, the trial court may determine in any particular factual situation *370 when the production of surveillance films, tapes or photographs will most likely assist the search for truth.
Id. at 406.
In the instant case, the trial judge did not abuse his discretion in requiring that the plaintiff's wife submit to a deposition before the letter was produced. Moreover, the plaintiff was not prejudiced because not only was his counsel allowed to review the letter before Mrs. Sanders' testimony, but she also testified that she had related to plaintiff's counsel the contents of the letter months before trial.
As to the allegation of unfair prejudice of the jury, plaintiff has failed to show how the trial judge's handling of the letter had a "substantial bearing" on the jury verdict. See Neumeyer v. Terral, 478 So.2d 1281, 1285 (La.App. 5th Cir.1985), writ denied, 481 So.2d 631 (La.1986). Significantly, the letter related only to damages, which issue the jury never reached because they found no liability on the part of either defendant. We have previously held that, when a jury has decided the issue of liability against the plaintiff, any alleged error relative to the introduction of evidence concerning solely damages is inconsequential or harmless because it does not effect the judgment on liability. Smith v. Travelers Ins. Co., 418 So.2d 689, 692 (La.App. 4th Cir.1982), reversed on other grounds, 430 So.2d 55 (La. 1983); Faust v. Toole, 502 So.2d 1134, 1136 (La.App. 4th Cir.1987). We therefore hold that any alleged error with regard to the letter was harmless.
Accordingly, for the reasons given, we affirm the judgment of the trial court.
AFFIRMED.