# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1500


**SISTER NIRA LEDOUX, ET AL.**

**VERSUS**

**GRAND CASINO-COUSHATTA, ET AL.**


************

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT,
PARISH OF ALLEN, NO. C-2002-627
HONORABLE JOHN NAVARRE, DISTRICT JUDGE, PRO TEMPORE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of Jimmie C. Peters, Billy H. Ezell, and James T. Genovese, Judges.


**AFFIRMED.**

**M. Terrence Hoychick**
**Hoychick & Aguillard**
**Post Office Drawer 391**
**Eunice, LA 70535-0391**
**(337) 457-9331**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Sister Nira Ledoux**
    **Gale Thomas**

**Charles D. Elliott**
**Faircloth, Vilar & Elliott, L.L.C.**
**Post Office Box 12730**
**Alexandria, LA 71315-2730**
**(318) 442-9533**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Coushatta Tribe of Louisiana**

PETERS, J.

This appeal arises from a summary judgment rendered in favor of two plaintiffs, Sister Nira Ledoux and Gale Thomas, against the defendants: Grand Casino-Coushatta; the Coushatta Tribe of Louisiana; and Grand Casinos of Louisiana, Inc.-Coushatta.[1] The trial court awarded Sister Nira Ledoux $65,581.00 and awarded Gale Thomas $32,790.50. Only the Coushatta Tribe of Louisiana (Tribe) has appealed.[2] For the following reasons, we affirm the trial court judgment rendered against the Tribe.

## DISCUSSION OF THE RECORD

The litigation began as a lawsuit filed jointly by the two plaintiffs asserting separate claims based on breach of contract. The defendants own and operate a gambling facility at Kinder, Louisiana—the Grand Casino-Coushatta (Casino). Both claims in this litigation arise from jackpots registered on the identical slot machine at the Casino one year and five days apart. Sister Ledoux's award is exactly twice that of Ms. Thomas because of the difference in the number of coins wagered at the

[1]The original petition identifies the Coushatta Tribe of Louisiana as a sovereign nation owning land in Louisiana and operating a casino thereon pursuant to a contract with the State of Louisiana, and identifies Grand Casinos of Louisiana, Inc.-Coushatta as a Minnesota corporation authorized to do business in Louisiana. It identifies the Grand Casino-Coushatta as a separate legal entity—a joint venture operated by the other two defendants. The petition asserted that the three defendants operated a casino in Kinder, Louisiana, where the events occurred which formed the basis for this lawsuit. Subsequent pleadings make it clear that the Grand Casino-Coushatta is actually a trade name for the casino operation. Despite the assertions in the subsequent pleadings, the summary judgment now on appeal was rendered against the defendants as they were named in the original petition, i.e., the Grand Casino-Coushatta, the Coushatta Tribe of Louisiana, and Grand Casinos of Louisiana, Inc.-Coushatta.

[2]Shortly after the summary judgment at issue in this appeal was rendered, the Coushatta Tribe of Louisiana obtained new counsel. After new counsel obtained permission to enroll as counsel of record in these proceedings, the counsel that had previously been representing all of the defendants sought and obtained an order from the trial court allowing counsel to withdraw as counsel of record for all defendants. Thereafter, new counsel for the Coushatta Tribe of Louisiana sought and obtained an order of appeal. Accordingly, the Coushatta Tribe of Louisiana is the only appellant and the judgment rendered against Grand Casinos of Louisiana, Inc.-Coushatta is a final judgment.

time of each individual incident.  In both instances the Casino refused to honor the jackpots.

Sister Ledoux and Ms. Thomas filed suit against the defendants on November 4, 2002, cumulating their actions in the same judicial demand.  The Tribe and the Grand Casinos of Louisiana, Inc.-Coushatta responded with a number of pleadings, including a motion for summary judgment with respect to Ms. Thomas's claim.  In that motion, the defendants asserted that a malfunction in the slot machine voided any winnings registered by the machine and, thus, they were not liable to her for the claimed amount.  In response to the defendants' motion for summary judgment, both plaintiffs jointly filed a motion for summary judgment of their own.  After a hearing, the trial court rejected the defendants' motion for summary judgment and granted the plaintiffs' motion for summary judgment, awarding the previously stated amounts.  The Tribe then perfected this appeal.

**OPINION**

Before discussing the summary judgment issue, we deem it appropriate and necessary to discuss two issues preliminarily.  One involves the Tribe's assignment of error concerning jurisdiction, and the other involves the Tribe's exception of prescription.

*Jurisdiction*

Pleading that it is a sovereign Indian nation enjoying immunity from suits in state court, and claiming that it has not waived its immunity, the Tribe timely filed an exception of lack of jurisdiction in the trial court.  In a written opinion, the trial court rejected this exception, concluding that the Tribe, by means of language contained in its compact with the State of Louisiana (state) had specifically waived its sovereign

2

immunity. The Tribe previously filed a writ application with this court complaining that the trial court had erred in rejecting the exception, but this court, in an unpublished opinion, denied writs. *Ledoux v. Grand Casino-Coushatta*, 04-87 (La.App. 3 Cir. 3/5/04). The Tribe's effort to have the supreme court review our rejection of its writ application met with the same fate. *Ledoux v. Grand Casino-Coushatta*, 04-971 (La. 6/4/04), 876 So.2d 84.

In one of its assignments of error now before this court, the Tribe has renewed its immunity argument and has requested that this court revisit the issue. The plaintiffs have responded by asserting that we should reject this assignment of error by applying the law of the case doctrine.[3]

We find no merit in this assignment of error because we find no error in the trial court's original judgment or in our denial of the prior writ application. However, because no reasons were given in this court's earlier disposition of this issue, we will briefly explain why we agree with that prior decision that the Tribe expressly waived its sovereign immunity as to the claims asserted in this suit.

We begin by noting that the relationship between the Tribe and the state is set forth in the Tribal-State Compact for the Conduct of Class III Gaming. The pertinent language of the version of the compact in effect in 1998 and 1999, when the

---

[3] The law of the case doctrine provides that "an appellate court ordinarily will not reconsider its own rulings of law in the same case;" it applies to prior rulings of the appellate court and/or supreme court in the same case. This doctrine applies to parties who were in the litigation at the time of the prior ruling and had their day in court. The purposes of the doctrine are to avoid litigating the same issue again and to promote consistency of result within the case, essential fairness to the parties, and judicial efficiency. The "law of the case" is discretionary; it is not applicable to cases in which "the prior decision was palpably erroneous or its application would result in manifest injustice." *Estate of Patout v. City of New Iberia*, 01-151, p. 7 (La.App. 3 Cir. 6/27/01), 791 So.2d 741, 747 (*quoting Griggs v. Riverland Med. Ctr.*, 98-256, p.6 (La.App. 3 Cir. 10/11/98), 722 So.2d 15, 19, *writ denied*, 99-385 (La. 5/28/99), 735 So.2d 622).

plaintiffs' claims arose, is contained in Section 14:(B), and is entitled "DISPUTE

RESOLUTION." That section reads as follows:

> In the event a dispute arises from the gaming operation refusing to award an alleged prize or pay an alleged winning to a patron, the dispute is not resolved to the satisfaction of the patron, and the dispute involves an alleged prize or winning with a value of $500 or more, then:
>> (1) The gaming operation shall immediately notify the Tribal Gaming Commission. The Tribal Gaming Commission shall investigate the dispute and determine how much, if any, of the prize is to be awarded or the winning is to be paid, and shall provide written notification to the patron of their determination within thirty (30) days from the date of the dispute.
>> (2) In the event that the dispute is not resolved to the satisfaction of the patron, then the patron may pursue the matter in the following sequential manner:
>>> (a) mediation as provided in Section 14:(C) of this Tribal-State Compact.
>>> (b) legal action or proceeding as provided in Section 14:(D) of this Tribal-State Compact.

With regard to pursuing legal action as contemplated by Section 14(B)(2)(b), Section

14:(D) provides in pertinent part:

> Upon completion of the mediation in Section 14:(C) of this Tribal-State Compact, and if the dispute is not resolved to the satisfaction of a party, then that party may seek their remedy through a legal action or proceeding . . . .

The Tribe waived its sovereign immunity in its dispute with Sister Ledoux and Ms.

Thomas by agreeing to these terms.

The Tribe's argument on appeal in support of this assignment is vague and

non-specific.[4]  It has cited one Louisiana case, *Webb v. Paragon Casino*, 03-1700

(La.App. 3 Cir. 5/12/04), 872 So.2d 641, in support of its position. However, that

_____

[4]The Tribe's argument makes the general statement that "[t]he Compact only contains a waiver of immunity from suit in State Court as to claims between the Coushatta Tribe and the State." This is apparently a reference to the present compact, not the compact in effect when the instant claims arose. Although the Tribe did not expressly allude to the present compact's dispute resolution language, the record contains an amended version of the Tribal State Compact executed by the Louisiana Governor on December 8, 2000, and by the Tribal Chairman on December 11, 2000. The dispute resolution provisions we have quoted were modified by that amended version. However, these dispute resolution provisions were not in effect in 1998 and 1999.

4

case held that a tribe had not waived its sovereign immunity in a workers' compensation claim against the tribe and did not address the effect of the compact provisions set forth herein. That is to say, it did not address a dispute over the payment of a prize or winning to a patron as is now before us, and is, therefore, easily distinguishable from the case at hand.

*Exception of Prescription*

The Tribe has filed an exception of prescription in this court,[5] asserting that the plaintiffs' claims had prescribed based on the two year prescription provided by tribal law. In support of this argument, the Tribe attached two exhibits to the exception. One is an excerpt taken from the Tribe's Judicial Codes, and the other is a tribal amending resolution dated September 11, 2001. These exhibits purport to show that the Tribe imposed a two-year prescription on tort claims arising before September 11, 2001, and amended the period to one year by the resolution dated September 11, 2001. Neither of these exhibits is in the appeal record.

With regard to the filing of an exception of prescription in the appellate court, La.Code Civ.P. art. 2163 (emphasis added) states:

> The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, *and if proof of the ground of the exception appears of record.*
>
> If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.

---

[5] The pleading filed with us states that the exception is being raised for the first time. That statement is incorrect. The defendants, including the Tribe, pleaded the exception of prescription in their December 27, 2002 answer to the petition. They pleaded prescription again on May 20, 2005 in their supplemental and amending answer to the petition. However, the prescription issue was never taken up in the trial court.

Even assuming we can consider the Tribe's Judicial Code excerpts,[6] they do not support the Tribe's position. It is readily apparent from the exhibits that they relate to tort claims, while the claims before us are in contract. We recognize that we have the discretion to remand the exception to the trial court for a full hearing should the interests of justice require it. *Willett v. Premier Bank*, 97-187 (La.App. 3 Cir. 6/4/97), 696 So.2d 196. However, we do not find that the interests of justice require a remand in this matter. We simply reject the exception of prescription.

*Summary Judgment Issue*

We turn now to a discussion of the record pertaining to the trial court's ruling on the plaintiffs' motion for summary judgment. As an appellate court, we perform a *de novo* review of summary judgment rulings. *Doerr v. Mobil Oil Corp.,* 00-947 (La. 12/19/00), 774 So.2d 119. A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there exists no genuine issue as to any material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The mover has the burden of proving entitlement to summary judgment. La.Code Civ.P. art. 966(C)(2). However, La.Code Civ.P. art. 966(C)(2) further explains that if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim,

---

[6]Louisiana Code of Evidence Article 202(B)(1)(f) provides that "[a] court shall take judicial notice of the . . . [l]aw of foreign countries" when requested to do so by a party and when that party "provides the court with the information needed by it to comply with the request."

action, or defense. "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

The parties in this litigation recognize that the law of contracts is determinative of the issues before us. A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction. La.Civ.Code art. 1831. Once a prima facie case has been established by the plaintiff by a preponderance of the evidence, the burden shifts to the defendant. *Artificial Lift, Inc. v. Production Specialties, Inc.*, 626 So.2d 859 (La.App. 3 Cir. 1993), *writ denied*, 94-112 (La. 3/11/94), 634 So.2d 394. "Further, one who asserts a fact must carry the burden of proving that fact by a preponderance of the evidence." *Id* at 862. Under this article the Tribe had the burden of proving the facts rendering its obligations null. Thus, plaintiffs are entitled to summary disposition if they can show an absence of factual support for one or more elements essential to the Tribe's claim of the contract's nullity, modification, or extinction, and the Tribe is then unable to produce factual support sufficient to establish that at trial it will be able to prove by a preponderance of the evidence the contract's nullity, modification, or extinction.

The first claim arose on the evening of November 15, 1998, when Sister Ledoux visited the Grand Casino-Coushatta and played a Bonus Wheel Double Diamond Deluxe slot machine. When she deposited two quarters and activated the machine, it displayed three "7s," and the "Bonus Spin" display monitor then advised her that she had a bonus round. When she played the bonus round, the monitor on top of the machine lit up and displayed the message: "Congratulations, you have won

7

262,324 coins." Two Casino employees approached Sister Ledoux and informed her that she had just won a jackpot worth $65,581.00. After the machine was opened and examined by a Casino technician, a Casino supervisor advised Sister Ledoux that the Casino would not pay her the jackpot because the machine had malfunctioned. Instead, he paid her $100.00 for hitting the three "7s." Sister Ledoux refused to release the defendants and demanded payment of the full amount of the jackpot.

Immediately after the November 15, 1998 incident, the Casino took the machine out of service for in-house testing. During the testing process, the Casino technician was unable to locate a specific malfunction or replicate Sister Ledoux's winning scenario. Finding nothing wrong with the machine and convinced that no remedial work was necessary, the Casino technician simply replaced a chip on the machine's logic board as a precaution and returned the machine to the Casino floor.

On November 20, 1999, Ms. Thomas came to the Grand Casino-Coushatta and played the same machine. Instead of playing two quarters, as had Sister Ledoux, she deposited only one quarter. When she did, the machine immediately displayed three "7s" and the "Bonus Spin" display monitor advised her that she also had a bonus round. When she played the bonus round, the monitor on top of the machine lit up and displayed the message: "Congratulations, you have won 131,162 coins." As had been the case with Sister Ledoux, two Casino employees approached Ms. Thomas and informed her that she had just won a jackpot worth $32,790.50; a technician opened and examined the machine; and a supervisor then informed her that the Casino would not pay the jackpot because the machine had malfunctioned. Instead, the supervisor offered her $625.00 in settlement. Ms. Thomas rejected this offer.

8

After the incident with Ms. Thomas, the Casino sent the slot machine to Gaming Laboratories International, Inc. (GLI), a testing laboratory which provides testing and consulting services to the lottery and gaming industry. GLI received the machine at its Golden, Colorado location on December 6, 1999, and the Casino provided it with the history surrounding the plaintiffs' claims. After extensive testing, GLI was unable to locate a specific malfunction or to replicate the results which gave rise to this litigation. Notwithstanding its negative testing results, GLI concluded that the slot machine "must have malfunctioned" because it was not programmed to pay out that much money. GLI reported this conclusion to the Tribe but acknowledged that "the cause of the malfunction was indeterminate" because, like the Casino technicians, it was unable to reproduce the malfunction.

GLI's conclusion was the basis of the defendants' motion for summary judgment addressing Ms. Thomas's claim. Among the exhibits filed in support of the summary judgment was the affidavit of James R. Maida, the President, Chief Executive Officer, and co-founder of GLI. In his affidavit Mr. Maida stated that, based on a forensic review of the device, GLI had concluded that the machine malfunctioned on November 20, 1999 (the date of Gale Thomas's play) causing erroneous data to be displayed on the LCD screen. Mr. Maida stated that the program code of the machine only allowed for a bonus win of 800 for a one-coin bet, 1600 for a two-coin bet, and 2500 for three-coin bet. Noting that GLI's report had stated that "the game code software can not award any larger of a win under normal operating conditions," Mr. Maida concluded that "[f]or this to occur, the machine must have malfunctioned on November 15, 1998 and November 20, 1999." Elsewhere in his affidavit, Mr. Maida stated that the hardware had malfunctioned on November 20,

1999, adding that the machine bears a sign that states in large letters that "MALFUNCTIONS VOID ALL PAYS AND PLAYS."

Despite the fact that the slot machine had been sent to GLI with the specific request that it try to determine what happened regarding the jackpot hit by Ms. Thomas, it is clear from the GLI report that it was unable to do so. GLI described its "[a]ttempt to re-enact scenario on duplicate game" in its report in these words (emphasis added):

> After reviewing the state of game and reviewing the version of software in the game, it was determined that GLI Colorado *did not have the proper equipment to emulate the game.* A comparison of the amount of time that would have been needed to accomplish the task compared to the possible outcome resulted in the conclusion that this step would not be performed.

The deposition of Kevin Fontenot, the primary slot machine technician at the Kinder casino location, was also offered in support of the defendants' motion for summary judgment. In his deposition, Mr. Fontenot testified that he opened the suspect slot machine on both occasions at issue and was unable to ascertain the malfunction on either occasion. Despite finding nothing to support his position, he concluded that the slot machine had malfunctioned because something had occurred which was "not in the normal operating range." That is to say, both jackpots were in excess of the limits programmed into the machine, and the award of a jackpot in excess of those limits could only be the result of a malfunction.

The Tribe's defense is based on two contentions. One is that the bonus wheel on its face showed that the maximum pay for a three "7s" bonus was 800 for a one-coin bet; 1,600 for a two-coin bet; and 2,500 for a three-coin bet. However, photographs introduced in support of the motion for summary judgment do not support this assertion. Nowhere does any language appear on the slot machine that

10

the *maximum* payout is fixed by these numbers. In fact, Mr. Fontenot admitted that the language was not there. Thus, the Tribe's contention in this context is an argument not based on fact. Therefore, we find no material issue of disputed fact over whether the machine informed the player that there was a "maximum" payout in playing the bonus wheel. It did not do so.

The Tribe's second contention is that on its face the machine contained the language "[m]alfunctions void all pays and plays," and that this language is an explicit part of the contract between it and any player. Although the photographs filed in support of the Tribe's motion for summary judgment are not sufficiently clear to establish the presence of the language, the affidavit and deposition testimony offered by the Tribe declare that the language is present. However, the plaintiffs deny having ever seen it, thereby creating a factual dispute concerning this issue. The Tribe correctly points out that this language, if present, constitutes an explicit part of the contract between it and the plaintiffs. However, assuming the language to be present on the slot machine, an essential element of the Tribe's defense is that a malfunction occurred—and this is where the Tribe's argument fails. Whether a slot machine malfunctioned is a question of fact. *Griggs v. Harrah's Casino*, 05-321 (La.App. 4 Cir. 3/22/06), 929 So.2d 204, *writ denied,* 06-916 (La. 6/16/06), 929 So.2d 1288. To prove a malfunction caused these outcomes it was incumbent on the Tribe to prove that the malfunction occurred when the game was played. *Id.* "The bet is wagered when the game is played, and when the game is completed, the result is final." *Id*. at 217.

It is undisputed that nothing in the behavior of the slot machine in either instance suggested a malfunction. On both occasions the slot machine registered

11

jackpots and displayed messages informing the players of their good fortune. There were no noises, alerts, signs, warnings, LED displays, or other explanations signaling the players or the Casino that something was amiss in the operation of the machine. In fact, on each occasion Casino employees in the vicinity of the winning machines immediately, and without hesitation, informed the players of the specific amount won. Trained experts in both Louisiana and Colorado examined the machines and were unable to find a malfunction or even to duplicate the machine's mechanics in awarding the jackpots at issue.

The only basis for a claim of malfunction is the Tribe's suggestion that the jackpot awards simply should not have happened because the hardware and software were designed, built, and programmed to limit the machine payout, and the two jackpots at issue exceeded those limits. According to the Tribe, normal operation of this machine should have never produced the resulting jackpots.

The flaw in this argument is the assumption that neither the design, construction, nor programming of the device could conceivably yield any result other than that desired by the designer, manufacturer, or programmer. We know of no presumption in the law that would operate to say that just because a generally successful effort was made to build and program the machine to yield no results larger than a certain number, any result producing such a larger number was the result of a malfunction.[7] A malfunction defense requires factual support, not a presumption. Both Mr. Fontenot and Mr. Maida candidly admitted that no malfunction could be

---

[7]The functioning of software reflects the ingenuity of the designer-programmer. Who is to say that this software did not behave as it was intended to behave? A result undesirable from the Casino's standpoint does not necessarily mean that a malfunction caused it. It might have been that the result was programmed accidentally, or even purposely. It cannot be inferred that simply because the machine twice paid out more than it was believed to have been designed and programmed to pay out, there was a malfunction.

identified or duplicated, and Mr. Maida was not even sure whether the malfunction was in the hardware or the software. Thus, the Tribe was unable to produce factual support sufficient to establish that it would be able to satisfy its burden of proving a malfunction by a preponderance of the evidence at trial.

Additionally, a factually unsupported opinion, albeit from an expert in slot machines, cannot be used to invoke the resolutory condition that "[m]alfunctions void all pays and plays." If the Casino is the only authority that can determine whether a malfunction has occurred, there exists a basic unfairness in this wager contract. Although in this particular case the Casino contests only a win that supposedly exceeded the limits of the machine, by its reasoning the Casino could declare a malfunction for any win, even those within the claimed outside payout limit of the machine. At the same time, if there is a malfunction in the Casino's favor,[8] it would never be detected because the wagerer would not recognize that the machine had malfunctioned to deprive him of a win—he would simply assume a losing play of the slot machine.

By the testimony of the Tribe's own expert, a malfunction in the present case cannot be explained and is presently incapable of discovery and explanation. The assertion that a malfunction occurred rests solely on the Casino's word. Such a system places in the Casino's power a means to avoid its obligations that depends solely on its will as the obligor.

Louisiana Civil Code Article 1767 states that a conditional obligation, or one dependent on an uncertain event, is resolutory. The Comments to this article state that in its proper sense the word "condition" means "some operative fact subsequent

---

[8]Mr. Fontenot suggested in his testimony that, while rare, malfunctions do occur.

13

to acceptance and prior to discharge, a fact upon which the rights and duties of the parties depend." Revision Comments-1984(f). In the present case the Casino regards its obligation to pay a jackpot as enforceable if the machine is functioning properly; if it malfunctions its obligation ceases, nullifying all plays and pays. Louisiana Civil Code Article 1770 provides that a resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith.[9] We believe that here good faith requires that the Tribe be able to demonstrate with facts, not theory, that the machine malfunctioned.

A case similar to the present one is *Jones v. Fowler*, 185 So. 40 (La.App. Orleans 1938). In that case Fowler, the operator of a shooting gallery, offered a prize of $300.00 to any person, after payment of a fee, who could shoot out and obliterate a red figure "5" on a target from a certain distance with only three shots from a .22 caliber rifle. Jones claimed the prize when with three shots he succeeded in obliterating the red "5." The gallery operator admitted the agreement but refused to pay the prize, claiming that the agreement made him "the sole judge of all shooting" and that, according to his observation, not all the red was obliterated. No red could be seen with the naked eye, although some could be detected with the use of a magnifying glass. The trial court's decision to award the plaintiff the prize was affirmed because the contractual provision giving the operator the absolute power to determine whether or not the plaintiff had performed the obligation was potestative and hence voidable by the plaintiff, but the contract itself was not null and the court could determine whether or not the plaintiff had performed his part. In a Note, *Contracts–Potestative Conditions–Good Faith in Performance–Articles 1901, 2034,*

---

[9]According to its comments Article 1770 did not change the law. It reproduced the substance of Civil Code arts. 2024, 2034, and 2035 (1870).

*2035, Louisiana Civil Code of 1870*, 13 Tulane Law Review 626, the author points out that the court in *Jones v. Fowler* reached the proper result but that it could have decided the matter on the ground that the condition was not one dependent solely on the will of one of the parties, but rather upon an act tested by an objective standard. In other words, the condition was an enforceable one which required good faith in performance on the part of the defendant.

We cannot accept the Tribe's position that its contractual right to void a win because the machine malfunctioned can be exercised merely by its after-the-fact declaration that the machine had malfunctioned. It would not be good faith for the Tribe to insist that it have the right to void a jackpot for a malfunction and at the same time have the exclusive right to determine what a malfunction is and when it occurred. Thus, where there was no apparent malfunction indication by the slot machine itself, a casino may not rely on the argument that the machine was not intended to register the particular jackpot to deny payment. That is to say, there must objective proof of a malfunction. Good faith in performance of a contract requires that the resolutory condition, i.e., that a malfunction occurred which caused the jackpot, be tested by some objective standard. That objectivity is not demonstrated in this case.

### DISPOSITION

For the foregoing reasons we affirm the trial court judgment granting Sister Nira Ledoux and Gale Thomas summary judgment against the Coushatta Tribe of Louisiana. We assess all costs of this appeal to the Coushatta Tribe of Louisiana.

**AFFIRMED.**