682 So.2d 1250 (1996)
David McNEASE
v.
MURPHY CONSTRUCTION COMPANY.
No. 96-CC-0313.
Supreme Court of Louisiana.
November 8, 1996.
John Emerson Galloway, Nora Tierney Bolling, Galloway, Johnson, Tompkins & Burr, New Orleans, for Applicant.
Frank Allen Bruno, New Orleans, for Respondent.
BLEICH, Justice.[*]
David McNease was working for Murphy Construction Company as a heavy equipment operator when he was allegedly injured in the course and scope of his employment on November 17, 1994. Murphy Construction Company paid McNease compensation benefits from November 26, 1994 until May 16, 1995. On May 16, 1995, defendants presented McNease's treating physician, Dr. Fox, with a surveillance videotape that apparently showed McNease operating heavy farm equipment. Dr. Fox promptly released McNease to return to work, but ordered continued medical testing.
McNease then filed a claim against Murphy Construction Company in the 7th District of the Office of Worker's Compensation Administration. On July 11, 1995, McNease propounded Requests for Production of Documents. McNease requested that Murphy Construction Company state whether he was under surveillance, and if so to produce all photographs, motion pictures or videotapes produced by such surveillance. Murphy Construction Company filed a formal objection to this request, arguing that such materials are privileged attorney work product, and that the company should be permitted to depose the plaintiff prior to providing the materials produced by surveillance.
McNease filed a Motion to Compel Discovery on July 28, 1995. The Administrative Judge granted this Motion and ordered Murphy Construction Company to produce any surveillance materials by December 10, 1995. The Order contained no provision to allow Murphy Construction Company to first depose plaintiff McNease. The Fifth Circuit Court of Appeal denied the company's application for writs, finding the trial judge's decision discretionary under Moak v. Illinois Cent. R.R., 93-783 (La. 1/14/94), 631 So.2d 401.

DISCUSSION
This court previously considered the timing of discovery of surveillance materials in *1251 Moak v. Illinois Cent. R.R., supra.[1] In that case we held that "[m]indful of the parties' competing considerations and the objectives of discovery, the trial court may determine in any particular factual situation when the production of surveillance films, tapes or photographs will most likely assist the search for truth." Id. at 406. Thus we gave the trial court complete discretion in ruling upon discovery sequence matters.
In this case, however, special circumstances are present that affect this exercise of discretion. The surveillance video was initially released to McNease's treating physician, Dr. Fox, in order to influence him to terminate McNease's treatment. In the trial setting, the use of evidence for one purpose opens up its use for other purposes by other parties, and constitutes a waiver of objection to its later use at trial. Hope v. Gordon, 186 La. 697, 702, 173 So. 177, 178 (La.1937); LaHaye v. Allstate Ins. Co., 570 So.2d 460, 464 (La.Ct.App.3d Cir.1990), writ denied, 575 So.2d 391 (La.1991). This result should also obtain during the pretrial discovery process. Once the defendant has seen fit to release the videotape for another purpose having substantial effects upon the rights of the person under surveillance, the release should generally be provided to all parties, including the party under surveillance, unless compelling reasons not to do so are provided.
The trial court ruling ordering Murphy Construction Company to produce its surveillance materials prior to plaintiff's deposition is affirmed.
LEMMON, J., dissents and assigns reasons.
MARCUS and VICTORY, JJ., dissent for the reasons assigned by LEMMON, J.
LEMMON, Justice, dissenting.
A defendant usually obtains a surveillance video as a basis for impeachment if the plaintiff's deposition or trial testimony as to the extent of his or her injuries varies from the depictions on the video. On the other hand, a plaintiff's usual basis for discovering a surveillance video is the need to determine whether the photography is misleading. Denying the defendant the opportunity to "pin down" the plaintiff's version of the injuries by taking the plaintiff's deposition before producing such surveillance videos will frequently prejudice the defendant's right to preserve any impeachment value in the video.
In order to balance the competing interests, the general rule should be that the deposition precede the production of the surveillance video, absent a showing by the plaintiff of special circumstances. By authorizing the trial court's exercise of discretion as to the timing of production of surveillance videos, the decision in Moak v. Illinois Cent. R.R., 93-783 (La. 1/14/94), 631 So.2d 401, implicitly recognized that the plaintiff must provide the trial court with some reason why production should precede the taking of the plaintiff's deposition. Absent a showing of special circumstances, the general rule should apply. See Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148, 151 (E.D.Pa.1973).
When these principles are applied to the instant case, the plaintiff did not make the necessary showing. Hence, the trial court abused its discretion in ordering production of the surveillance video.
NOTES
[*] Calogero, C.J., not on panel. Rule IV, Part 2, § 3.
[1] The Court in Moak also considered the preliminary issue of whether surveillance materials were susceptible of discovery at all. The Court found no immunity for such materials under the attorney work product exception of La.Code Civ. Proc. art. 1424, chiefly because that statute applies only to "writings," in contrast to Federal Rule of Civil Procedure 26(b)(3), which includes tangible things as well as documents.