693 So.2d 1164 (1997)
Linda WOLFORD and Michael Wolford
v.
JOELLEN SMITH PSYCHIATRIC HOSPITAL, PIA Westbank, Inc. d/b/a JoEllen Smith Psychiatric Hospital, Psychiatric Institutes of America, Inc., and Robert Dahmes, M.D.
No. 96-CC-2460.
Supreme Court of Louisiana.
May 20, 1997.
Rehearing Denied June 20, 1997.
*1165 Gregory Gilroy Gremillion, Metairie, John M. Crosby, New Orleans, Windhorts, Gaudry, Ranson, Higgins & Gremillion, Gretna, for Applicant.
Ashton R. Hardy, John Michael Lamers, Hardy & Carey, L.L.P., Metairie, for Respondent.
Lawrence S. Kullman, New Orleans, for Louisiana Trial Lawyers, Amicus Curiae.
Harry Alston Johnson, III, for Louisiana Association of Defense Counsel, Amicus Curiae.
MARCUS, Justice.[*]
On October 27, 1990, Linda Wolford was allegedly injured while participating in an obstacle course as part of a family therapy program at JoEllen Smith Psychiatric Hospital.[1] Mrs. Wolford allegedly injured her back in the "nitro-crossing initiative," an activity that involves swinging on a rope across an imaginary pit eight to ten feet wide. Mrs. Wolford and her husband, Michael Wolford, brought the present personal injury action as a result of this alleged injury. During the course of pre-trial discovery, plaintiffs requested that defendant produce any surveillance videotapes in its possession. Defendant admitted that it had two such tapes in its possession, one made in 1993 and one made in 1995. However, defendant refused to produce the tapes arguing that it was entitled to take a supplemental deposition of Mrs. Wolford to question her about her physical injuries and activities during the time pictured in the surveillance videotapes before producing them. Plaintiffs filed a motion to compel production of the videotapes. Defendant in turn filed a motion to compel Mrs. Wolford to submit to a supplemental deposition. *1166 The trial judge ordered defendant to immediately disclose the surveillance videotapes and denied defendant's request to take a supplemental deposition prior to the disclosure of the tapes. The court of appeal denied defendant's writ application.[2] Upon defendant's application to this court, we granted certiorari to review the correctness of the trial judge's order.[3]
The issue presented for our determination is whether the defense in a personal injury action is entitled to depose the plaintiff regarding his or her physical injuries and activities prior to releasing surveillance videotape of the plaintiff in response to a discovery request. The issue is a narrow one addressing the timing of the production of surveillance videotape during the course of pretrial discovery.
La.Code Civ.P. art. 1422 is Louisiana's general discovery article which provides that any relevant matter, not privileged, is discoverable. Even information which will be inadmissible at trial, but that is "reasonably calculated to lead to the discovery of admissible evidence" is discoverable. Under this broad rule, surveillance videotape is discoverable material, which should be turned over a reasonable amount of time before trial. Surveillance videotape ostensibly picturing a personal injury plaintiff engaged in physical activity is highly relevant to the plaintiff's claim for damages as the result of physical injury. Such surveillance videotape could be used as substantive, corroborative, or impeachment evidence at trial.
On the other hand, Louisiana's attorney work product exclusion, contained in La. Code Civ.P. art. 1424, provides a qualified privilege for "writing[s] obtained or prepared... in anticipation of litigation or in preparation for trial." Under Article 1424, trial preparation materials are not subject to discovery unless the "denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice." However, in Moak v. Illinois Central Railroad Company, 93-0783 (La.1/14/94), 631 So.2d 401, this court noted that Article 1424 refers only to "writing" and concluded that the attorney work product exception does not apply to tangible things such as videotapes, films, or photographs. The court thus held that surveillance videotape is not protected by the attorney work product privilege and is discoverable prior to trial.
Moreover, requiring the production of surveillance videotape a reasonable time before trial is consistent with the modern trend broadening the scope of discovery and narrowing the attorney work product exclusion from discovery. See Moak, 93-0783, 631 So.2d at 404 (citing Jenkins v. Rainner, 69 N.J. 50, 350 A.2d 473, 475 (1976)); Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d 125, 129 (La.1983) (citing Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Furthermore, pre-trial disclosure of surveillance videotape advances the objectives of pre-trial discoveryto discover and obtain facts pertinent to the litigation, to assist in trial preparation, to narrow and clarify issues, and to facilitate settlement and abandonment of less than meritorious claims. Hodges, 433 So.2d at 129. Most importantly, requiring the defense to produce surveillance videotape a reasonable time before trial allows the plaintiff the opportunity to examine the video for authenticity and to expose any misrepresentation, in a medium that is especially susceptible to manipulation and distortion.
Since the contents of surveillance videotape is discoverable a reasonable time before trial, it is axiomatic that the existence or nonexistence of surveillance materials is discoverable. Although the defendant is not required to volunteer any information, a defendant must respond, either in the affirmative or the negative, to an interrogatory inquiring about the existence of surveillance videotape.
With these general discovery rules in mind, we turn to an examination of the narrow issue before us involving the timing of the discovery of surveillance videotape in relation *1167 to the deposition of the plaintiff. This court has addressed this issue twice before. In Moak v. Illinois Central Railroad Company, 93-0783 (La.1/14/94), 631 So.2d 401, the court held that the trial judge has the discretion to determine the appropriate timing for the pre-trial discovery of surveillance materials. The court reasoned that Louisiana has broad discovery rules and has traditionally granted trial courts broad discretion when regulating pre-trial discovery. The court could "discern no difference between this [surveillance materials] and the discovery of any other evidence...." Id. at 406. In granting the trial judge this broad discretion, the court emphasized that the trial judge is in the best position to determine when the production of surveillance materials "will most likely assist the search for truth."
The court addressed the timing issue a second time in McNease v. Murphy Construction Company, 96-0313 (La.11/8/96); 682 So.2d 1250. The court applied the Moak holding but found that the fact that the defendant previously released the surveillance videotape to the plaintiff's doctor to influence him to terminate the plaintiff's treatment constituted a "special circumstance" which mandated a modification of the trial judge's discretion. In such a case, the court stated that the surveillance videotape should be provided to all parties, regardless of whether the defendant has had the opportunity to take the plaintiff's deposition.
We agree with Moak that surveillance materials are generally discoverable and with McNease that there may be some special circumstances that would justify pre-deposition disclosure of them. However, we disagree with Moak`s conclusion that there is nothing that distinguishes surveillance materials from other evidence that would necessitate delaying their production until after the deposition of the plaintiff. To the contrary, surveillance videotape has potential value as a unique impeachment tool, distinct from other forms of evidence, that would be irrevocably lost if the defendant were required to turn it over before fully deposing the plaintiff about his activities and injuries.
We also disagree with Moak's conclusion that the search for truth is best served by the exercise of the trial judge's complete discretion as to the timing of pre-trial discovery of surveillance materials. Rather, the search for truth is best served by a general rule favoring post-deposition production of surveillance videotape. The credibility of the plaintiff in a personal injury case is key. Surveillance videotape can be a critical means of testing the plaintiff's credibility with respect to the physical injuries and limitations claimed. Surveillance videotape picturing the plaintiff engaged in physical activity has the potential to reveal inconsistencies between the plaintiff's claimed injuries and resulting limitations and the plaintiff's actual abilities. However, any potential impeachment value would be destroyed by ordering pre-deposition disclosure of such surveillance materials. If the plaintiff were to view the surveillance videotape prior to being deposed as to his physical injuries and limitations during the time period pictured in the videotape, he would be more likely, either inadvertently or deliberately, to tailor his testimony to correspond with the actions pictured in the videotape. On the other hand, if the surveillance videotape were held until after the plaintiff were deposed, the plaintiff who testifies truthfully would be supported by the surveillance videotape, free from doubt about whether he tailored his deposition testimony to conform to the videotape. Either way, delaying the production of the videotape until after the plaintiff has been fully deposed aids in the search for the truth.
We thus modify our holding in Moak in favor of a general rule giving preference to post-deposition disclosure of surveillance materials. The general rule is that the plaintiff's deposition precede the production of the surveillance videotape, absent a showing by the plaintiff of special circumstances.[4] This *1168 rule best serves the overarching purpose of our system of justiceto search for the truth. Ours is an adversarial system of justice that relies on the ability and resources of adversaries to uncover the truth by testing each other's evidence through a variety of methods, the most important of which is cross-examination. Moreover, in an adversarial system, the defendant has a right to a defense and to cross-examination. In a personal injury case, surveillance videotape can be critical to the defendant's defense and ability to effectively cross-examine the plaintiff. Surveillance materials may thus serve an important function in the search for truth and, absent special circumstances, their value should be preserved by delaying their disclosure until after the deposition of the plaintiff.
However, we recognize that surveillance videotape may not be totally reliable, that it may be taken out of context, and that it is vulnerable to manipulation through various editing techniques. For these reasons, we emphasize that although the production of surveillance videotape is to be delayed until after the plaintiff's deposition, the plaintiff is entitled to the videotape a reasonable time before trial, so as to give the plaintiff ample time to determine any weaknesses in the videotape. Our rule thus balances the defendant's need to preserve valuable potential impeachment evidence for use during cross-examination and the plaintiff's need to determine whether the videotape is authentic or misleading.
Turning to the particular facts and circumstances of this case, the record does not disclose any special circumstances that necessitate disclosure of the surveillance videotapes before defendant has the opportunity to take a supplemental deposition of Mrs. Wolford. Her one and only deposition took place in January, 1993, more than four years ago. It is not unreasonable for defendant to now want to take another deposition of Mrs. Wolford to question her about her injuries during the time period that has elapsed since the first deposition. Plaintiffs' claim is still pending.[5] They have alleged on-going medical injuries and attendant physical limitations, which may have changed over time. It is appropriate that Mrs. Wolford be deposed again. Moreover, plaintiffs are claiming damages for every day of every year since the accident, which occurred in 1990. It is of no moment that the videotapes were taken in 1993 and 1995. Plaintiffs should be fully conversant with the injuries for which they are claiming damages, for the entire time period included in the claim. It is also important to note that plaintiffs did not request the production of the surveillance videotapes until 1996, at which time defendant was forthcoming about the existence of the two surveillance videotapes in its possession.
Since plaintiffs have failed to show any special circumstances that would necessitate pre-deposition production of the surveillance videotapes, defendant is entitled to a supplemental deposition of Mrs. Wolford prior to releasing the videotapes to them. The trial judge thus abused her discretion in ordering the immediate disclosure of the surveillance videotapes.

DECREE
For the reasons assigned, the judgment of the trial court granting plaintiffs' motion to compel discovery of surveillance videotapes and ordering immediate disclosure of the videotapes is reversed and the motion to compel is denied. The trial court's judgment denying defendant's motion to compel the supplemental deposition of Mrs. Wolford is also reversed, and the motion to compel is granted. All costs are assessed against the plaintiffs.
JOHNSON, J., dissents.
CALOGERO, C.J., and KIMBALL, J., dissent and assign reasons.
CALOGERO, Chief Justice, dissenting.
Recently, this Court addressed the issue of whether production of a surveillance videotape *1169 in a personal injury case must be delayed until after the plaintiff's deposition is taken. In Moak v. Illinois Railroad, 93-C-0783 (La. 1/14/94), 631 So.2d 401, we held that the trial judge has "broad discretion when regulating pre-trial discovery." That discretion by its nature is exercised both to safeguard the interests of the parties and preserve the goals of the discovery process. The primary motivation for the rule announced in Moak was a respect for the prerogatives of the trial judge and the confidence that in general the trial judge can and will exercise his discretion with impartiality and with concern for a just result. The majority's holding today mandates that discovery of surveillance tapes be delayed until after the plaintiff is deposed, and therefore abandons the trust in the competence of Louisiana's trial judges that we expressed in Moak. Because that trust is vital to the efficient functioning of our court system, I would not reverse Moak as the majority has done today. I therefore dissent.
KIMBALL, Justice, dissenting.
It is well established that Louisiana trial courts have broad discretion when regulating pre-trial discovery, which discretion will not be disturbed on appeal absent a clear showing of abuse of that discretion. Moak v. Illinois Central Railroad Co., 93-0783 (La.1/14/94); 631 So.2d 401, 406 (on rehearing). While the surveillance videotapes must be produced within a reasonable time before trial, it is the prerogative of the trial judge to determine when the surveillance videotapes must be produced during the course of pre-trial discovery. The trial judge is given this broad discretion because the trial judge is in the best position to evaluate the particular factual situation and circumstances and decide when the production of the surveillance videotapes will most likely assist in the search for the truth. Therefore, there is no reason for a court to craft a contrary general rule, not found in legislation, to give preference to post-deposition disclosure of surveillance tapes during the course of pre-trial discovery. Absent such a legislative requirement, it is my view that a trial judge should exercise discretion based on the facts and law involved in a particular case. I believe my view is supported by La.C.C.P. art. 1422, which gives the trial judge the power to control the scope of discovery.[1]
Based upon the above and the particular factual circumstances involved in this case, I do not believe the trial judge abused her discretion in ordering the immediate disclosure of the surveillance videotapes. Therefore, I respectfully dissent from the majority's opinion.
NOTES
[*] Traylor, J. not on panel. Rule IV, Part 2, § 3.
[1] At the time of the alleged injury, Linda Wolford's stepdaughter was being evaluated and treated by JoEllen Smith Psychiatric Hospital and the obstacle course was part of the treatment recommended for her step-daughter.
[2] 96-1736 (4th Cir. 9/11/96).
[3] 96-2460 (La.1/31/97), 687 So.2d 390.
[4] Other jurisdictions have enunciated a similar rule. See Dodson v. Persell, 390 So.2d 704 (Fla. 1980) (holding that within the trial court's discretion, the surveilling party has the right to depose the party or witness filmed before being required to produce the contents of the surveillance materials); Jenkins v. Rainner, 69 N.J. 50, 350 A.2d 473 (1976) (finding that defendants were entitled to take a supplemental deposition of the plaintiff on the issue of the injuries she suffered before giving up the films for examination); Cabral v. Arruda, 556 A.2d 47 (R.I. 1989) (holding that the surveilling party has a right to depose plaintiff before producing the surveillance materials).
[5] There is no evidence that the delay in resolving plaintiffs' claim has been caused in any way by dilatory actions by defendant.
[1] La.C.C.P. art. 1422 provides in pertinent part:

Unless otherwise limited by order of the court in accordance with this Chapter, the scope of discovery is as set forth in this Article and in Articles 1423 through 1425.
La.C.C.P. arts. 1424 and 1425 give the trial judge discretion in determining when trial preparation materials prepared by an adverse party are discoverable. See also La.C.C.P. art. 1426 which provides that a trial court may make any order which justice requires to protect a party, from whom discovery is sought, from annoyance, embarrassment, oppression or undue burden or expense.